UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LINDA ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-318-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, [1] | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Linda Rogers contends that the Administrative Law Judge ("ALJ") assigned to her case erred by denying her claim for Disability Insurance Benefits ("DIB"). Specifically, she asserts that the ALJ failed to properly consider the opinion of her treating physician and failed to account for her mental impairments in calculating her Residual Functional Capacity ("RFC"). Rogers requests that the decision be reversed and a decision be entered awarding benefits. In the alternative, she requests that her case be remanded for a new hearing. [Record No. 10] The Commissioner of Social Security ("Commissioner") contends that the ALJ properly considered the evidence of record and that the ALJ's decision should be affirmed. [Record No. 14]

For the reasons discussed below, the claimant's motion will be granted and this matter will be remanded for further proceedings.

---

[1] As of January 23, 2017, Nancy A. Berryhill is the Acting Commissioner of Social Security, and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

# I.

### a. Claim History

Rogers filed an application for DIB under Title II of the Social Security Act ("Act") on March 28, 2013. [Administrative Transcript, "Tr.," at 149] The application alleged a disability onset date of March 22, 2013. [*Id.*] The Social Security Administration ("SSA") denied her application initially and upon reconsideration. [Tr. at 55, 69] Rogers exhausted her administrative remedies with an administrative hearing before an ALJ [Tr. at 26], a written decision by the ALJ [Tr. at 11], and review by the Appeals Council [Tr. at 1]. Her case is ripe for review pursuant to 42 U.S.C. § 405(g).

Rogers was 51 years old at the time of her application for benefits, and has a 10th grade education. [Tr. at 31, 56] She has past relevant work experience as a cashier and stocker. [Tr. at 44, 67] Rogers alleges that she was let go from her employment due to excessive absences caused by her physical impairments. [Tr. at 36] Rogers lived with her daughter at the time of the administrative hearing. [Tr. at 32]

Rogers contends that she is unable to work due to consistent back and hip pain, and because of a panic disorder and depression. [Tr. at 33-34] She claims to be unable to drive because it is hard for her to sit still for more than 15 to 20 minutes. [Tr. at 33] Rogers also asserts that she is unable to stand for more than 15 to 20 minutes, at which point her back, left leg, and left hip begin to hurt. [Tr. at 37] Rogers states that she cannot lift 25 pounds. [*Id.*] Rogers states that she rises early because she has trouble sleeping, and is unable to function for 30 to 45 minutes until her medication begins to work. [*Id.*] While Rogers' medicines cause fatigue, she is able to care for her hygiene, load the dishwasher, help with laundry, and change the sheets on her bed. [Tr. at 38-41] Rogers contends that she sometimes needs help getting

dressed, such as when she wears jeans. [Tr. at 41] Rogers occasionally goes to the grocery store and out for meals with her children. [Tr. at 39]

### b.    Treatment and Evaluations

Rogers underwent an evaluation on May 8, 2013, with consultative examiner Christi M. Hundley, Ph.D. [Tr. at 432-35] Dr. Hundley noted Rogers to be adequately groomed and had an upright posture and normal gait. [Tr. at 432] Rogers's speech was coherent and relaxed, and she was alert, pleasant, and cooperative. [*Id.*] Her mood appeared at times to be sad, neutral, and somewhat anxious. [*Id.*] She was tearful at times, and described her mood as "confused." [*Id.*] Rogers described herself as feeling "alone" and "desolate," and stated that she liked to be alone. [Tr. at 434] She described daily panic attacks, which will last 1 to 2 hours with her medication or 5 to 6 hours without it. [Tr. at 434] Dr. Hundley assigned Rogers a Global Assessment of Functioning ("GAF") score of 60. [*Id.*] She found that Rogers's ability to understand and remember simple instructions, and her ability to maintain attention and concentration, to be fair to good. [Tr. at 435] Her ability to interact appropriately in a work setting was found to be fair to guarded, and her ability to handle the stresses of a work environment was considered guarded, "given her presentation and description." [*Id.*]

On May 30, 2013, Rogers underwent a physical examination performed by William E. Waltrip, M.D., a consultative examiner. [Tr. at 437-43] Dr. Waltrip noted no history of injury to claimant's back, but reported back pain for at least ten years. [Tr. at 437] Rogers was described as a "very pleasant" during the examination, and was "reasonably cooperative" during range of motion testing. [Tr. at 438-39] She had a normal gait, had no muscle tenderness or spasm found in her back, could walk heel to toe and tandem, could perform a knee squat, and could walk on the tip of her toes and heels. [Tr. at 439]

Dr. Waltrip assessed chronic back pain with radiculopathy in her right lower extremity. [Tr. at 440] He also noted fibromyalgia by history, right hip pain, and discomfort from varicose veins. [*Id.*] However, Dr. Waltrip found these impairments to only minimally limit her ability to walk, stand or sit, and found that Rogers should be able to lift objects of at least 25 pounds without limitation. [*Id.*] He noted that Rogers had good strength of grip, with ability to perform fine and gross manipulations, and found her range of motion to be without limitation. [*Id.*]

State agency consultants reviewing Rogers's file and concurred with the conclusions of the examining consultants. Psychologists Barbara Lewis, Ph.D., and Ilze Sillers, Ph.D., reviewed claimant's record for psychological limitations and found them to be non-severe. [Tr. at 63-64 and 77-78] Dr. Lewis noted that Rogers was not fully credible for the degree of psychological limitation alleged. [Tr. at 63] Dr. Sillers found that the intensity and severity of the purported restrictions are not fully supported by the treatment records and clinical observations. [Tr. at 78] As for physical limitations, state agency physician Donna Sadler, M.D., found that Rogers can carry 20 pounds occasionally, 10 pounds frequently, and can sit or stand with normal breaks for 6 hours in an 8-hour workday. [Tr. at 80] Dr. Sadler found no manipulative limitations, but found that Rogers could never climb ropes, ladders, or scaffolds. [*Id.*] Rogers was limited to occasionally climbing ramps or stairs, balancing, stooping, crouching, crawling, and kneeling. [*Id.*]

On March 11, 2014, records from Rogers's primary care physician suggest that the claimant was seeking disability, stating that she was unable to work because of her mental status. [Tr. at 569] On April 3, 2014, Steven Green, M.D., Roger's primary care physician, completed a residual functional capacity questionnaire on her behalf. [Tr. at 552-58] He noted

first contact with Rogers in June of 2009, and that he has seen her for primary care about every three months. [Tr. at 552] Dr. Green diagnosed fibromyalgia, neuropathy, depression, and generalized anxiety disorder. [*Id.*] Her prognosis was listed as "poor," and her symptoms were listed as muscle pain, pain in back, tingling in arms and legs. [*Id.*] Pain was listed as severe, with reduced range of motion, tenderness, trigger points, muscle weakness, impaired sleep, and impaired appetite. [Tr. at 553] Dr. Green opined that Rogers's depression and anxiety affected her physical condition, that her emotional factors contribute to the severity of her symptoms and functional limitations, that her pain is consistent with her medical diagnosis, and that Rogers does not exaggerate her pain. [Tr. at 554] He noted that her pain is severe enough to interfere with her attention and concentration "occasionally (1/3 of day)" and that her ability to deal with the normal stresses of competitive employment is plagued by marked limitations. [*Id.*]

Dr. Green asserted that Rogers's impairment levels are expected to last at least twelve months, and that she is limited to sitting, standing, and walking for 15 minutes without a change in position. [Tr. at 555] He noted that she can sit, stand, and walk with normal breaks for less than 2 hours in an eight hour day. [*Id.*] Dr. Green stated that Rogers must be able to lie down at will to relieve pain, that she requires a job that allows shifting positions at will, but that she need not elevate her legs at will or need a cane or assistive device during walking. [Tr. at 556] He noted that she could lift 10 pounds and less than 10 pounds only infrequently, and that she could never lift 20 pounds or greater. [*Id.*] Dr. Green also found limitations in Rogers's use of her right hand for any activity, and in use of her left hand for reaching overhead. [Tr. at 557] He found that she could bend at the waist only "occasionally (1/3 of day)", that he impairments would affect her ability to work at a regular job on a daily basis,

and that she will have a reasonable medical need to be absent from a full time work schedule on a chronic basis. [*Id.*] Finally, Dr. Green opined that Rogers's symptoms would require her to be absent from work for "10 +" days per month. [Tr. at 558]

Rogers received epidural injections for pain treatment throughout 2012. [*See* Tr. at 334] It was specifically noted that Rogers was *not* seeking drugs. [*Id.*] Records from an August 7, 2013, office visit with Katherine Ballard, M.D., report pain in Rogers's lower back, right leg and hip pain, and occasional tingling in her legs. [Tr. at 447] The pain was reported as better with medication and heat and ice, and worse with standing for long periods of time. [*Id.*] Lumbar spine range of motion during the examination was restricted with flexion and extension, and tenderness was noted bilaterally as to paravertebral muscles. [Tr. at 448] During a primary-care office visit on July 24, 2014, Rogers reported to A.P.R.N. Leann Brown that she was "learning to deal with her anxiety with other methods besides taking Xanax." [Tr. at 591] On August 26, 2014, Miranda Boone, a Certified Psychologist performed an initial assessment of Rogers and assigned her a GAF score of 25. [Tr. at 601] Finally, treatment records from Ephraim McDowell Regional Medical Center on September 13, 2014 report "worsening depression and suicidal ideation," and complaints of lower left quadrant pain. [Tr. at 606]

    c.    **The ALJ's Decision**

ALJ Bonnie Kittinger issued a decision on February 20, 2015, finding that Rogers has not been under a disability since the date of her application. [Tr. at 20] The ALJ found that Rogers suffers from the severe impairments of degenerative disc disease and fibromyalgia. [Tr. at 13] The ALJ found Rogers's mental impairments of depression and anxiety to be non-severe because, "considered singly and in combination, [they] do not cause more than minimal

limitations in [her] ability to perform basic mental work activities." [*Id.*] The ALJ found no "listing-level severity" with respect to whether Rogers's impairments met or medically equaled any listed impairments, and stated that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually, or in combination." [Tr. at 15]

Specifically, the ALJ noted consideration of listings 1.02 and 1.04, relating to dysfunctions of the joints and spine. Regarding listing 1.02, the ALJ found that no major dysfunction of any joint resulting in an inability to ambulate effectively or an inability to perform fine and gross motor movements effectively. [Tr. at 15-16] The ALJ found insufficient record evidence regarding Roger's back problems to meet listing 1.04, such as nerve root compression, spinal arachnoiditis, or lumbar stenosis. [Tr. at 16]

ALJ Kittinger concluded that Rogers has the RFC to lift and carry twenty pounds occasionally and ten pounds frequently. [Tr. at 16] The ALJ further found that Rogers can sit, stand or walk for six hours in an eight-hour workday, so long as she has the opportunity to alternate positions at 45 to 60 minute intervals. [*Id.*] Finally, the ALJ determined that Rogers is able to climb ramps or stairs, balance, stoop, kneel, crouch, and crawl on an occasional basis; but found that she cannot climb ladders, ropes or scaffolds. [*Id.*]

Based on the testimony of a vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the claimant can perform. [Tr. at 19] Specifically, the ALJ noted representative occupations such as ticket taker/attendant, laborer/hand packer, and inspector/tester/grader. [Tr. at 20]

**II.**

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other

work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

Despite the deferential standard of review, "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation marks omitted). Rogers alleges two failures of the ALJ to follow SSA rules and regulations. First, she argues that the ALJ "fail[ed] to state good reasons for rejecting the uncontradicted medical opinion from a treating source." [Record No. 10-1 at 7] Second, Rogers argues that the ALJ failed to consider her mental impairments "in assigning her Residual Functional Capacity." [*Id.* at 11]

a.  **Treating Source Opinion**

"The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion. These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R § 404.1527(c)(2); Soc. Sec. Rul. No. 96-2p). As the Sixth Circuit has explained, "[t]his procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

In *Gayheart*, the ALJ accorded "little weight" to the opinion of the claimant's treating physician (Dr. Onady). 710 F.3d at 376. The ALJ found that Dr. Onady's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence.'" *Id.* The ALJ did "discuss[] the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports." *Id.* However, the Court noted that these factors are to be applied *after* the ALJ determined that the treating-source opinion would not be given controlling weight. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). What the ALJ did *not* do was to "identify the substantial evidence that is purportedly inconsistent with Dr. Onady's opinions." *Id.* at 377. The Court reasoned,

> [t]he failure to provide "good reasons" for not giving Dr. Onady's opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation. *See Wilson,* 378 F.3d at 544. For example, the conclusion that Dr. Onady's opinions "are not well-supported by any objective findings" is ambiguous. One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical

and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions.

710 F.3d at 376-77. "Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Tarter v. Colvin*, No. 5:14-CV-269-REW, 2015 WL 4972933, at *5 (E.D. Ky. Aug. 18, 2015) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x. 543, 552 (6th Cir. 2010).

As in *Gayheart* and *Tarter*, the ALJ in the present case provided some discussion of Dr. Green's treatment records. The ALJ found that,

> [a]s for the opinion evidence, on April 7, 2014, Dr. Green summarized that the claimant had fibromyalgia, neuropathy, depression and a generalized anxiety disorder, with muscle pain, back pain, and tingling in her arms and legs. Dr. Green then opined that the claimant could lift ten pounds only infrequently, and could sit, stand, or walk for less than two hours per eight-hour workday, along other limitations (Exhibit 15F). *The undersigned gives this opinion only slight weight as it is inconsistent with the objective medical evidence of record, the claimant's own subjective complaints to Dr. Green, as well as Dr. Green's own longitudinal treatment records and lack of objective findings on exam.*

[Tr. at 18 (emphasis added)] This determination is deficient under the applicable regulation.

The ALJ simultaneously determined that the treating-source opinion for Dr. Green is not subject to controlling weight, and decided what weight the opinion will be given. As in *Gayheart*, this conflates the two determinations. As explained at 20 C.F.R. § 404.1527(2)(a), the first step is to determine whether the ALJ's decision is to be given controlling weight and, if not, the second step is to determine what weight the opinion will be given.[2] But the mere

---

[2] The treating-source opinion is to be given controlling weight if the ALJ finds that the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-

lack of a distinct discussion is not the fatal flaw. Rather, the fatal flaw is the lack of any specific articulation of the alleged inconsistencies with other substantial evidence, or any distinct discussion of the "medically acceptable clinical and laboratory diagnostic techniques" that may or may not support Dr. Green's opinion.

The ALJ provided some background summations of Dr. Green's examination, but provided little to no detail regarding how Dr. Green's opinion was inconsistent with his longitudinal history or the objective medical evidence. Instead, the ALJ provides a preceding narrative that discusses Dr. Green's treatment history together with that of other physicians, and itself contains contradictory evidence. For example, the ALJ notes that Rogers "did not visit her primary care physician during March 2013, the month she allege[s] she became disabled." [Tr. at 17] And that, at an April 2013 visit, during which Rogers complained of "an earache and body aches, along with depression," "the claimant had no abnormal physical findings apart from those related to an episode of acute sinusitis." [*Id.*] However, the ALJ intermittently discusses Rogers's trips to Dr. Ballard, who noted on August 7, 2013, that "the claimant *did* have a slowed and stooped gait . . . and her lumbar range of motion was restricted with flexion and extension." [*Id.*] The same stooped gait and restricted lumbar motion was reported by Dr. Wright on April 2, 2013. [Tr. at 18]

Rogers regularly stated that her pain was worse with "standing for long periods of time." [Tr. at 447; 572; 644] This is not inconsistent with Dr. Green's opinion that Rogers

---

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(2)(a). However, "[w]hen we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." *Id.*

-12-

could stand or walk for less than two hours per eight hour workday. While consultative examiner Dr. Waltrip alleged no restriction in range of motion, there is ambiguity in the record regarding whether he actually performed complete range of motion testing, which the ALJ acknowledges in the conclusion that "it does appear that he performed *some* range of motion testing." [Tr. at 17 (emphasis added)] And contrary to consultative examiner Dr. Waltrip's report, treating physician Dr. Ballard noted numerous times that Rogers's lumbar range of motion was restricted. [Tr. at 17-18, citing Exs. 10F, 14F, 17F]

Further, despite inconsistent reports regarding range of motion, the Sixth Circuit has acknowledged that fibromyalgia patients typically "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007). "The process of diagnosing fibromyalgia includes: (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id*.

In short, because the ALJ did not sufficiently explain how Dr. Green's opinion was inconsistent with the weight of objective medical evidence, the ALJ's weighing of the treating physician's opinion is not supported by substantial evidence. The ALJ's explanation fails to offer "good reasons" as required by 20 C.F.R. § 404.1527 (c)(2). As previously noted, "[t]he failure to provide 'good reasons' for not giving [a treating-source] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377 (6th Cir. 2013) (citing *Wilson*, 378 F.3d at 544).

As in *Tarter*, "[t]he ALJ did not catalog or list what undergirded her phrasing." 2015 WL 4972933 at *5. Instead, the ALJ gave a rather "neutral recitation of the history," followed

by a finding that tracks the language of the regulation. *Id.* "An ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Id.* (quoting *Friend,* 375 F. App'x at 551) (internal quotation mark omitted). Regardless of whether Rogers is ultimately entitled to benefits, "this circuit has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." *Gayheart*, 710 F.3d at 380 (quoting *Cole,* 661 F.3d at 939 (internal quotation marks omitted)).

    **b.**    **RFC Calculation**

The ALJ discusses Rogers's alleged mental impairments and the evidence at step two, where the ALJ concludes that Rogers's mental impairments are not severe. Apart from two paragraphs appearing to incorporate those findings by reference, the ALJ does not discuss the mental impairments at any point in her RFC analysis.[3]

---

3    At the conclusion of the step two analysis, the ALJ indicates the following:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[Tr. at 15] At the beginning of the step four analysis, the ALJ states:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also

-14-

Failure to find an impairment to be "severe" is not reversible error when the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987)). Here, however, it is not clear that Rogers's mental impairments were actually considered in the remaining steps of the analysis, as the Commissioner concedes. [Record No. 14 at 12 ("Ultimately, it is true that the ALJ opted not to incorporate mental work restrictions into the RFC finding.")] Moreover, the ALJ's finding that Rogers's mental impairments are "nonsevere," is not supported by substantial evidence.

The severity determination at step two is a "*de minimis* hurdle" meant to "screen out totally groundless claims." *Nejat*, 359 F. App'x at 576 (quoting *Rogers,* 486 F.3d at 243 n. 2; *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 89 (6th Cir. 1985)). "[I]f an impairment has 'more than a minimal effect' on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." *Id.* at 576-77 (quoting Soc. Sec. Rul. 96–3p). The ALJ found that Rogers's mental impairments caused only mild limitations, and therefore were not severe. However, the record evidence establishes a history of depression that has been obviously debilitating at times, and is documented by Rogers's treating physician, and credited as contributing to her physical disability. [Tr. at 387, 554] For example, in May 2012, prior

---

considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

[Tr. at 16] Taken together, these paragraphs seemingly assert that the ALJ conducted the "more detailed" assessment of Rogers's mental function capacity and included such in the RFC findings. However, as discussed, there is no evidence that the ALJ imposed any limitations in the RFC on account of Rogers's mental limitations.

to Rogers's husband passing away, Rogers arrived at Dr. Green's office with her husband, who reported that she was suicidal. [Tr. at 387] Rogers's was unwilling to get out of her car and enter the clinic. [*Id.*] Instead, staff went and spoke to her at the car. [*Id.*] Rogers's symptoms were listed as anxiety, a history of depression was noted, and her appearance was listed as chronically ill. [Tr. at 387-88] Rogers was given a note to be excused from work for 3 weeks. [Tr. at 388]

On September 9, 2014, after Rogers's husband passed away, she was seen by Miranda Boone at Bluegrass Comprehensive Care. [Tr. at 600-601] Rogers was assigned a GAF score of 25, and she was diagnosed with major depressive disorder. [Tr. at 601] Rogers also testified that, following her husband's death, her depression increased significantly. [Tr. at 48] While the ALJ points to some conflicting testimony, including Rogers's assertion in late September 2014 that her depression was improved in spending time with her daughter, there is more than enough evidence to overcome the *de minimus* severity hurdle. Moreover, the ALJ overstates the level of Rogers's daily activity. The ALJ's decision indicates that Rogers goes out for meals with her children. [Tr. at 13, 15] However, during the hearing, Rogers testified that it had been at least three to four weeks since she had last been to a restaurant. [Tr. at 39]

The ALJ's finding of Rogers's mental impairments as non-severe is reversible error because it is not supported by substantial evidence and because the mental impairments were not otherwise appropriately factored into Rogers's RFC. The Commissioner contends that, despite the failure to include the mental impairments in the RFC calculation, the error is harmless because the occupations noted would not be affected by mild mental limitations. However, there is ample evidence in the record, including opinion evidence and treatment records not otherwise discussed by the ALJ, to suggest more than mild limitations. It is not

clear that the full extent of Rogers's mental limitations was considered in her RFC calculation, as is required by regulation. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(3).

### IV.

ALJ Kittinger failed to provide good reasons for discounting the opinion of claimant's treating physician. Further, the ALJ erred in finding claimant's mental impairment nonsevere, and did not incorporate Rogers's mental impairments in calculating her RFC. Therefore, substantial evidence does not support the ALJ's conclusion that Rogers was not disabled from March 22, 2013, through the date of the administrative hearing. Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Linda Rogers's Motion for Summary Judgment [Record No. 10] is **GRANTED**, in part, to the extent that she seeks a remand for further administrative proceedings. The motion is **DENIED**, to the extent she seeks an award of benefits.

2. Acting Commissioner Nancy A. Berryhill's Motion for Summary Judgment [Record No. 14] is **DENIED.**

3. This decision of Administrative Law Judge Bonnie Kittinger is **REMANDED** for further administrative proceedings consistent with this opinion and pursuant to sentence four of 42 U.S.C. 405(g).

This 19th day of June, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge